DRYWALL TAPERS AND POINTERS OF
GREATER NEW YORK, LOCAL UNION
1974 of I.B.P.A.T., AFL-CIO,                     MEMORANDUM
                                                                     <u>AND ORDER</u>
                                                                     05 CV 2746 (JG)

                         Plaintiff,

              - against -

BOVIS LEND LEASE INTERIORS, INC.;
TURNER CONSTRUCTION CO.; STRUCTURE
TONE, INC.; KAJIMA; R&J CONSTRUCTION
CORP.; NASTASI & ASSOCIATES, INC.;
COMPONENT ASSEMBLY SYSTEMS, INC.;
and WOODWORKS CONSTRUCTION, INC.,

                       Defendants,

CARPENTER'S LOCAL 52, UNITED
BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA,

                       Proposed Intervenor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

A P P E A R A N C E S :

      LEWIS, CLIFTON & NIKOLAIDIS, P.C.
          275 Seventh Avenue, Suite 2300
          New York, New York 10001-6708
     By:    Daniel E. Clifton, Esq.
          *Attorneys for Plaintiff*

      MEYER SUOZZI ENGLISH & KLEIN, P.C.
          425 Broadhollow Rd., Suite 405
          Mineola, New York 11501
     By:    John Howard Byington, III
          *Attorneys for Proposed Intervenor Carpenter's Local 52*

JOHN GLEESON, United States District Judge:

This case is before me on remand from the court of appeals to decide the motion by Carpenter's Local 52, United Brotherhood of Carpenters and Joiners of America ("Local 52") to intervene in the case. For the reasons stated below, the motion is denied.

BACKGROUND

Familiarity with the prior decisions of this Court and the court of appeals is assumed. Briefly, after more than two decades of litigation between the plaintiff here, Drywall Tapers and Pointers of Greater New York, Local Union 1974 of I.U.P.A.T., AFL-CIO ("Local 1974"), and the mob-controlled Local 530 of the Operative Plasterers' and Cement Masons' International Association ("Local 530"), an injunction dated March 17, 2005 effectively put Local 530 out of business. *Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530 of the Operative Plasterers' & Cement Masons' Int'l Ass'n*, No. 93-0154, 2005 WL 638006 (E.D.N.Y. Mar. 17, 2005). The injunction gave Local 1974 jurisdiction over certain drywall finishing work in New York City.

The March 17, 2005 injunction was published in the "Green Book," a binding compilation of rulings rendered pursuant to the New York Plan for the Settlement of Jurisdictional Disputes (the "New York Plan"), the mechanism created by the Building & Construction Trades Council of Greater New York (the "Trades Council") and the Building Trades Employers' Association to resolve jurisdictional disputes. The inclusion of the injunction in the Green Book obligated all contractors bound by the New York Plan to award drywall finishing work in New York City to Local 1974.

One week after that injunction was issued, Local 52 was formed, and some of the same contractors who had previously employed Local 530 members entered into collective bargaining agreements with Local 52.[1] Local 52 is not affiliated with the Trades Council, so it is not bound by the New York Plan or by the March 2005 injunction.

On June 8, 2005, Local 1974 filed the complaint in this case against four construction managers (Bovis Lend Lease Interiors, Inc. ("Bovis"), Turner Construction Co. ("Turner"), Structure Tone, Inc. ("Structure Tone") and Kajima/VJB Construction Services LLC ("Kajima")) and four drywall finishing contractors (R&J Construction Corp. ("R&J"), Nastasi & Associates, Inc. ("Nastasi"), Component Assembly Systems, Inc. ("Component"), and Woodworks Construction, Inc. ("Woodworks")). The complaint alleged that those contractors employed Local 52 members to perform drywall finishing work in Manhattan, contrary to their obligation under the New York Plan to employ Local 1974 members. Local 52, which is not bound by the New York Plan, was not named as a defendant.

The complaint focused on ongoing construction projects. Bovis, Structure Tone and Nastasi were charged with assigning drywall finishing work at a project at 731 Lexington Avenue in Manhattan to a contractor who had a collective bargaining agreement with Local 52; Turner and Component were charged with doing the same thing on a project at Memorial Sloan Kettering Cancer Center on East 68th Street and First Avenue in Manhattan; Kajima and R&J were charged with the same thing on a project at 75-25 153rd Street in Kew Gardens, Queens;

---

[1] A more detailed recitation of these events is set forth in *Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Bovis Lend Lease Interiors, Inc.*, No. 05-2746, 2005 WL 2205836, at *4-7 (E.D.N.Y. Sept. 9, 2005), familiarity with which is assumed.

and Bovis and Woodworks were charged with the same conduct with respect to a job at Riverside Boulevard and West 66th Street in Manhattan.

With respect to each of the ongoing projects, the defendants were charged with having contracted prior to March 17, 2005 with a company that had a collective bargaining agreement with Local 530. Then, when the corrupt Local 530 was ousted and the March 17, 2005 injunction directed that the work it had been assigned be assigned instead to Local 1974, the defendants, according to Local 1974, unlawfully assigned the work to Local 52.

Local 1974's complaint sought, *inter alia*, a permanent injunction prohibiting the assignment of drywall finishing work governed by the New York Plan to any employer that does not have a collective bargaining agreement with Local 1974. On June 21, 2005, 13 days after the complaint was filed, Local 1974 sought a preliminary injunction to the same effect.

In August 2005, Local 52 initiated the first of many related proceedings before the National Labor Relations Board ("NLRB"). Some were representation proceedings, seeking elections of Local 52 as the exclusive bargaining representative by drywall finishing employees of certain contractors. Others were unfair labor practice charges against Local 1974 arising directly out of its request for an injunction in this case. One such charge, filed on September 30, 2005, assailed Local 1974's efforts to coerce the four construction-manager defendants (Bovis, Turner, Structure Tone and Kajima) to comply with the New York Plan. On the same day, Local 52 filed a separate unfair labor practice charge against Local 1974 pertaining to each of the four drywall taping defendants (R&J, Nastasi, Component and Woodworks), again assailing 1974's efforts in this case to force those companies to comply with the New York Plan.[2]

---

[2] These unfair labor practice charges are attached as Exhibits 14-18 of the Attorney Declaration in Support of Local 52's Motion to Intervene, and to Stay Proceedings.

In the meantime, this case was proceeding rapidly. As mentioned, Local 1974 moved for a preliminary injunction prohibiting the defendants from assigning drywall finishing work covered by the New York Plan to contractors that did not have collective bargaining agreements with Local 1974. The defendants, for their part, cross-moved to dismiss the complaint. Oral argument of the cross-motions occurred on July 22, 2005, and continued on August 4, 2005. An agent of Local 52 was in the courtroom on both occasions.

On September 9, 2005, I denied the defendants' motions to dismiss and made it clear that I would grant Local 1974's application for a preliminary injunction against any defendant who was in fact bound by the New York Plan. *See Drywall Tapers*, 2005 WL 2205836, at *2. An evidentiary hearing was scheduled for September 27, 2005 for any defendant who claimed not to be bound.

Settlement discussions began almost immediately after the September 9, 2005 memorandum and order was filed. At the request of all the parties, the Court became deeply involved. On September 20, 2005, a settlement conference in chambers between the plaintiff and the construction managers yielded sufficient progress to justify adjourning the September 27 hearing until October 15. The evidentiary hearing was subsequently adjourned to October 24, 2007 in light of the continuing settlement negotiations. On October 17, 2005, defendant Nastasi requested a delay in the case until after "the expected intervention" of the NLRB. As mentioned, Local 52 was then attempting to convince the NLRB (as was Nastasi) that Local 1974's request for an injunction in this case constituted an unfair labor practice. On October 19, 2005, counsel for Local 1974 reported that the parties were "close to resolution of this matter." A number of additional meetings had occurred among all counsel, and a draft settlement agreement was then

5

being circulated. Thus, another adjournment of the evidentiary hearing was requested. On October 20, 2005, I granted that request, adjourning the evidentiary hearing to November 10, 2005. I also denied Nastasi's request that I await its expected intervention of the NLRB.

On November 4, 2005, Local 52 moved to intervene in this case pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. Four days later, Local 1974's counsel reported significant progress in the settlement negotiations, and on the motion of all parties, the November 10 evidentiary hearing date was used for a status conference regarding the settlement, with the hearing (for any non-settling defendant who claimed not to be bound by the New York Plan) adjourned to December 5, 2005.

The motion to intervene was also discussed at the November 10 conference. Local 52's counsel requested that the Court not hold any evidentiary hearing "pending determination of unfair labor practices and representation proceedings which are pending before the NLRB." November 10, 2005 Tr. at 11. This request, which had recently been made by Nastasi and denied, was denied again. Counsel were asked how much time they needed to complete the briefing on the motion to intervene. Based on their answers, a schedule was set and oral argument was scheduled for December 16, 2005.

On December 2, 2005, Local 1974's counsel informed the Court that almost all parties had settled and the remainder would do so within days. Accordingly, the December 5 hearing was adjourned to December 15, 2005. On December 14, 2005, based on the parties' reports that settlement was imminent, I ordered the defendants wishing to settle to finalize their agreements or else appear at the scheduled hearing. In response to that order, the parties that had not already finalized their settlement agreements did so, and within two days all eight settlement

6

agreements had been executed and filed under seal. An injunction was entered on consent on December 16, 2005, which was amended in a manner not relevant here three days later.

In light of the settlement, the oral argument of Local 52's motion to intervene, which had been scheduled for December 16, was adjourned to January 20, 2006, and supplemental briefing was ordered on the significance, if any, of the settlement on the motion.

On January 13, 2006, Nastasi appealed the consent injunction, as did Local 52. Because Local 52's notice of appeal of the injunction order divested this Court of jurisdiction over issues related to that order, I denied Local 52's motion to intervene on jurisdictional grounds. *Drywall Tapers & Pointers of Greater N.Y., Local Union 1974 v. Bovis Lend Lease Interiors, Inc.*, No. 05-2746, 2006 WL 322384, *1 (E.D.N.Y. Feb. 10, 2006) (amended without substantive change on February 13, 2006). On March 10, 2006, Local 52 appealed the denial of its motion to intervene.

After consolidating the three appeals, the court of appeals dismissed Nastasi's appeal and affirmed the holding that Local 52's appeal had deprived me of jurisdiction to decide the motion to intervene. *Drywall Tapers & Pointers of Greater N.Y., Local Union 1974 v. Nastasi & Associates, Inc.*, 488 F.3d 88, 90 (2d Cir. 2007). The court of appeals then found that Local 52's non-party status prevented consideration of its appeal from the consent injunction and remanded the case for me to decide, my jurisdiction now being restored, the merits of Local 52's motion to intervene. *Id.* at 95-96.

DISCUSSION

A.  *The Rule 24(a) Standard*

A motion to intervene may be granted only if an applicant: "(1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994).[3] All four of these conditions must be satisfied. *Id.* When ruling on a motion to intervene, a district court should accommodate a policy of "efficiently administrating legal disputes by resolving all related issues in one lawsuit" as well as an interest in "keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged." *Id.* at 69. As I find the motion to intervene untimely, I need not decide whether the other conditions for intervention are met. *See United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594 (2d Cir. 1986) ("'If [the motion] is untimely, intervention must be denied.'" (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973))).

B.  *Timeliness*

The determination of timeliness is not measured by any fixed standard; rather, it is "evaluated against the totality of the circumstances." *Farmland Dairies v. Comm'r of the N.Y.*

---

[3]  Rule 24(a), which governs motions to intervene, reads in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

*State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043-44 (2d Cir. 1988) (citations omitted). Factors to be considered include: "(a) the length of time the applicant knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against a finding of timeliness." *MasterCard Int'l Inc. v. Visa Int'l Svc. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (quoting *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987)).

The first factor in the timeliness analysis, the length of time Local 52 knew of its interest before making the motion, favors denying Local 52's motion. This action directly challenged the defendants' attempts to use Local 52 members on drywall finishing work in New York City. Local 52 is mentioned throughout the complaint. It sought to vindicate its interest in the ongoing work at issue in the case and work like it in the future by petitioning for relief from the NLRB. Local 52 sent a representative to attend the oral arguments that took place in this case on July 22, 2005 and August 4, 2005. Accordingly, I have no doubt that Local 52 was aware of these proceedings from their inception. Nevertheless, it took no steps to intervene for five months, waiting instead until settlement was imminent. *Cf. MasterCard Int'l Inc. v. F.I.F.A, Inc.*, No. 06-3036, 2006 WL 3065598, *1-2 (S.D.N.Y. Sept. 26, 2006), *aff'd sub nom. MasterCard Int'l Inc. v. Visa Int'l Svc. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006) (finding motion to intervene untimely where would-be intervenor waited five months until eve of hearing). In short, instead of seeking intervention, Local 52 chose a different means of attempting to protect its interests: bringing charges against Local 1974 before the NLRB.

Local 52's suggestion that its delay in seeking intervention is justified because it had to await the outcome of the NLRB representation elections in late October 2005 is disingenuous. Local 52's interest in this case was not created by its election as a bargaining representative for certain companies' employees. It arose from the collective bargaining agreements it entered into in the spring of 2005, and from the fact that Local 1974 filed this action to require the defendants to abide by the New York Plan, which would require them to use only 1974 members for drywall finishing jobs in New York City.[4] Local 52's interests were thus directly implicated the moment Local 1974 filed the complaint. Local 52 certainly did not feel disabled from filing unfair labor practice charges by the fact that it had not yet won representation elections. Nor did it feel hampered on September 27, 2005 in threatening to sue the contractors' association of which Bovis, Turner, Structure Tone and Kajima were members if those companies were directed to use Local 1974 contractors for work covered by the New York Plan, which would cause Nastasi and R&J to breach their collective bargaining agreements with Local 52. *See* docket entry 67. Nor did Local 52 suggest in its letter to the Court the same day that, but for the fact that representation elections had not been held, it would seek to intervene in the case. *See* docket entry 68. Local 52's decision not to seek intervention in this fast-moving case for five months had nothing to do with representation elections. It had everything to do with its choice of another forum, the NLRB, in which to challenge Local 1974's assertion of jurisdiction over jobs covered by the New York Plan.

---

[4] Local 52 has admitted as much. *See* Supp. Letter, Jan. 6, 2006, docket entry 90, at 4-5 (arguing consent injunction "incompatible with Local 52's collective bargaining agreements with certain of the defendants and other employers who perform drywall finishing work in New York").

The second factor, prejudice to the existing parties, strongly favors denying Local 52's motion. The settlement discussions in this case, which began immediately after my September 9, 2005 decision, were complicated and protracted, and the Court was deeply engaged in them at the parties' request. The case concerned ongoing drywall finishing jobs on which bids had been made based on a pay scale below Local 1974's pay scale. In adapting to an injunction requiring the allocation of work to Local 1974, the defendants and Local 1974 worked long and hard to agree on how drywall finishing workers would be paid on those pending jobs and others like them, which had already been bid. The settlement agreements executed by each of the defendants and filed under seal contain the results of those painstaking negotiations. Since the jobs were ongoing, time mattered. The process was difficult but successful, and that is why the prefatory language in the consent injunction applauded all parties for their considerable effort.

In that context, Local 52 had every right to hover nearby -- and on occasion in the courtroom itself -- as the parties and the Court worked first to resolve the cross-motions and then to achieve a difficult and time-sensitive settlement. Local 52 also had every right to file its numerous unfair labor practice charges in the NLRB, hoping to obtain relief there. But once the tack it selected failed, and Local 52 decided to seek intervention in this case shortly before a difficult settlement could be finalized, it had no right to expect the Court and the parties to drop everything until its motion could be addressed. On November 10, 2005, six days after the motion was filed and in cooperation with counsel, I set a schedule by which the motion would be argued on December 16, 2005. The rest of the case settled before that date. If it had not yet settled, or I had advanced the oral argument *sua sponte* to a date before the settlement,[5] I would

---

[5] Doing so would have allowed me to rule on the merits of Local 52's motion to intervene prior to the appeal from the consent injunction, and thus would have removed the need for this remand.

have denied the motion as untimely and especially unfair to all of the parties who had worked so hard to reach a difficult resolution of claims affecting ongoing construction. I reach that same conclusion here. *See Pitney Bowes, Inc.*, 25 F.3d at 72 (refusing to allow intervention where it would have "required a reopening and a renegotiation of the consent decree, thereby wasting the fruits of lengthy negotiations that had culminated in agreement"); *Republic of Phil. v. Christie's*, No. 98-3871, 2000 WL 1056300, *4 (S.D.N.Y. Aug. 1, 2000) (denying motion to intervene largely due to time parties had already spent arranging forthcoming settlement).

The third factor to be considered, prejudice to the would-be intervenor, does not prompt me to grant Local 52's motion. The denial of the motion does not leave Local 52 without recourse for the injury it claims to have suffered. Nothing hinders Local 52 from bringing its own action to vindicate the rights it claims were infringed by the defendants' compliance with the New York Plan. In fact, most of the employers with whom Local 52 has collective bargaining agreements are not parties to this case, making a separate action necessary for complete vindication of those rights. *See N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 153 F.R.D. 69, 72 (S.D.N.Y. 1994) ("Indeed, the fact that alternative remedies exist is another commonly accepted basis for denying intervention as of right.").

Finally, as the foregoing discussion notes, no unusual circumstances counsel in favor of granting Local 52's motion. Local 52's delay in moving was due not to any incapacity on its part, but solely to its tactical choice to seek relief first before the NLRB. Accordingly, Local 52 has failed to make a timely motion for intervention as of right, and as such is not entitled to intervene in this case.

CONCLUSION

For the foregoing reasons, the motion to intervene is denied. I need not address Local 1974's other arguments against the motion.

So ordered.


John Gleeson, U.S.D.J.

Dated: September 18, 2007
       Brooklyn, New York